IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
GWENDOLYN TRAYLOR,              :
                               :
          Plaintiff,           :
                               :
     v.                        : Civil Action No. 08-547-JJF
                               :
MICHAEL J. ASTRUE,             :
Commissioner of Social         :
Security,                      :
                               :
          Defendant.           :
                               :
                               :
```

David J. Lyons, Esquire of THE LYONS LAW FIRM, Wilmington,
Delaware.
Attorney for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Dina White
Griffin, Esquire, Special Assistant United States Attorney, of
the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: Eric P. Kressman, Esquire, Acting Regional Chief
Counsel of the SOCIAL SECURITY ADMINISTRATION, Philadelphia,
Pennsylvania.
Attorneys for Defendant.

**MEMORANDUM OPINION**

November  $\mathcal{R}$  2009
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Gwendolyn Traylor, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401-433. Plaintiff has filed a Motion For Summary Judgment (D.I. 11) requesting the Court to remand this matter to the Administration for further findings and proceedings. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 15) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated August 19, 2006, will be affirmed.

## BACKGROUND

### I. Procedural Background

Plaintiff filed a protective application for DIB on February 16, 2005, alleging disability since August 15, 1997, due to cervical disc disease and headaches. (Tr. 45-48). Plaintiff's application was denied initially and upon reconsideration. (Tr. 33-35, 38-41). Thereafter, Plaintiff requested a hearing before

1

an administrative law judge (the "A.L.J."). On August 19, 2006, the A.L.J. issued a decision denying Plaintiff's application for DIB. (Tr. 17-23). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 13). The Appeals Council denied Plaintiff's request for review, and the A.L.J.'s August 19, 2006 decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying her claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I. 3) and the Transcript (D.I. 5) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has not filed a Reply Brief. Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time of her alleged onset of disability, Plaintiff was 35 years old, and at the time her insured status expired, Plaintiff was 44 years old. (Tr. 22). Plaintiff is a high school graduate and was on active military service during the Gulf War. In 1998, Plaintiff attended Cuyahoga Community College as a full-time student, majoring in occupational therapy. (Tr. 107). In August 1999, Plaintiff changed her course of study to a two-year degree in Environmental Health and Safety Technology with a concentration in Safety Compliance. (Tr. 129). Plaintiff continued to attend college courses through 2005. (Tr. 116-118).

The Commissioner contends, and Plaintiff does not dispute, that the time period relevant to Plaintiff's current claim is February 20, 1999, the date of a prior decision rendered on her claim, through December 31, 2002, the date she was last insured. A summary of the relevant medical evidence follows.

On August 25, 1999, the Veteran's Administration ("VA") evaluated Plaintiff's active duty medical records in connection with several disabilities claimed by Plaintiff, including among others, loss of use of her right ovary due to in-service salpingectomy, tendinitis of the left shoulder, neuritis of the left ulnar nerve, spine conditions, post-traumatic and sinus headaches, IBS, dysthymic disorders, hemorrhoids, anemia and

3

joint pain. (Tr. 79-101). The VA determined that Plaintiff had a combined service related disability of 70% as of March 23, 1999. (Tr. 77, 79-101). On August 28, 2001, the VA issued a decision that Plaintiff was entitled to individual unemployability effective March 23, 1999, based in part on the March 23, 1999 evaluation. (D.I. 77).

Plaintiff sought no medical treatment in 1999. In 2000, Plaintiff made one visit to the VA Medical Center in Cleveland, Ohio, for acne. (Tr. 334).

In January 2001, Plaintiff was injured when part of a ceiling collapsed on her while she was in the shower. (Tr. 334). Plaintiff went to the VA Medical Center complaining of "headaches and shoulder pain of one month duration." (Tr. 334). Plaintiff also stated that before the ceiling collapsed, she was experiencing migraines three to four times per week. (Tr. 323). A CT scan of Plaintiff's head was negative. (Tr. 328). Plaintiff was prescribed medication for her headaches. After July 2001, Plaintiff made no further complaints of headaches. On April 18, 2003, Plaintiff denied having had a migraine for a period of one year. (Tr. 296).

Plaintiff also reported to the VA Medical Center for complaints of right shoulder pain, hand pain, and weakness, and expressive aphasia, all following the collapse of the ceiling. (Tr. 323-325, 328-334). An MRI showed mild disc bulging but no

4

stenosis. (Tr. 327). Plaintiff's examination was essentially normal. (Tr. 328, 330). After July 2001, Plaintiff made no further complaints regarding the aforementioned issues.

In 2002, Plaintiff reported to the VA Medical Center for nasal symptoms related to her chronic sinusitis, which caused intermittent problems during the past several years. (Tr. 312). Plaintiff was prescribed allergy medication and was recommended for an allergy evaluation.

Plaintiff did not seek mental health treatment during the relevant time period. (Tr. 305-334). Plaintiff also denied feeling down, depressed or hopeless during medical screenings. (Tr. 316, 321, 331).

B.   The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel, and Plaintiff testified. The A.L.J. consulted a vocational expert and asked her to consider a hypothetical person with Plaintiff's vocational profile who is limited to unskilled work, could lift or carry 20 pounds occasionally and ten pounds frequently, could sit, stand or walk 6 hours in an 8 hour work day, could occasionally climb ladders, ropes and scaffolds, could perform other postural activities occasionally, could only reach overhead with the left hand occasionally, had to avoid concentrated exposure to temperature extremes and wetness, had to avoid even moderate exposure to fumes, odors and dust, and avoid all

5

exposure to machinery and heights. (Tr. 497-498). The
vocational expert testified that such a plaintiff could perform
several light, unskilled jobs in the national economy including
(1) appointment clerk, with 500 jobs locally and 82,000 jobs
nationally, (2) finish machine operator, with 800 jobs locally
and 96,000 jobs nationally, and (3) inspector, with 900 jobs
locally and 87,000 jobs nationally. (Tr. 508-509). The A.L.J.
then asked the vocational expert to consider a second
hypothetical individual who could lift or carry 10 pounds
occasionally, less than 10 pounds frequently, could stand or walk
2 hours in an eight hour day, could sit for six hours in an eight
hour day and would have the same non-exertional limitations as
the first hypothetical individual. (Tr. 499). The vocational
expert identified several jobs, including 1) security worker,
with 400 jobs locally and 52,000 jobs nationally, (2) dispatcher,
with 250 jobs locally and 38,000 jobs nationally, and (3)
telemarketing worker, with 1,100 jobs locally and 89,000 jobs
nationally. The vocational expert also agreed that if all of
Plaintiff's testimony was found to be credible, a hypothetical
person with those limitations described by Plaintiff could not
perform any work in the national economy.

In his decision dated August 19, 2006, the A.L.J. found that
Plaintiff suffered from cervical disc disease and headaches,
impairments which are severe, but which do not meet or medically

equal a listing. The A.L.J. also found that Plaintiff's "subjective complaints of pain and limitation in her ability to work cannot be fully squared with a general lack of objective evidence to explain her symptoms." (Tr. 21). The A.L.J. further found that Plaintiff had the residual functional capacity to perform a range of sedentary work, subject to the limitations identified by the A.L.J. in his hypothetical to the vocational expert at the hearing. Based on this residual functional capacity, the A.L.J. determined that Plaintiff could not perform her past relevant work, but could perform a number of other jobs existing in significant numbers in the national economy. Accordingly, the A.L.J. concluded that Plaintiff was not under a disability within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if

7

it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

## I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. § 404.1512(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. § 404.1520. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this

10

determination, the A.L.J. must analyze the cumulative effect of
all of the claimant's impairments.  At this step, the A.L.J.
often seeks the assistance of a vocational expert.  Id. at 428.

## II.  Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her Motion, Plaintiff contends that the A.L.J.'s decision
is not supported by substantial evidence.  Specifically,
Plaintiff contends that the A.L.J. (1) failed to properly
evaluate Plaintiff's testimony and inappropriately relied on
Plaintiff's attendance at college classes to contradict her
testimony; (2) failed to sufficiently consider the disability
rating of the VA; (3) failed to consider medical evidence
concerning Plaintiff's severe disabling headaches, and (4) failed
to consider the opinion of a treating psychiatrist that Plaintiff
suffered from mental disorders, including a schizophrenia.

The Court has reviewed the decision of the A.L.J. in light
of the record evidence and concludes that it is supported by
substantial evidence.  A plaintiff's subjective complaints alone
are insufficient to establish disability, and allegations of pain
must be supported by objective medical evidence.  20 C.F.R. §
404.1529.  In this regard, the A.L.J. must first determine
whether the plaintiff suffers from a medical impairment that
could reasonably be expected to cause the alleged symptoms.  Once
the A.L.J. makes this determination, he or she must evaluate the
intensity and persistence of the pain or symptoms, and the extent

11

to which they affect the individual's ability to work.
Specifically, the A.L.J. is required to consider such factors as
(1) plaintiff's daily activities; (2) the duration, location,
frequency, and intensity of the pain and other symptoms; (3) any
precipitating and aggravating factors; (4) any medication taken
to alleviate pain or other symptoms; (5) treatments other than
medication; (6) any other measures used to relieve the symptoms;
and (7) other factors concerning functional limitations or
limitations due to pain or other symptoms. Id. at §
404.1529(c)(3)(i)-(vii). This analysis requires the ALJ to
assess the plaintiff's credibility to determine the extent to
which he or she is accurately stating the degree of pain and/or
the extent to which he or she is disabled by it. Id.; Gantt v.
Commissioner Social Sec., 205 Fed. Appx. 65, 67 (3d Cir. 2006)
("[A]n ALJ has discretion to "'evaluate the credibility of a
claimant and arrive at an independent judgment in light of
medical findings and other evidence regarding the true extent of
the pain alleged by the claimant.'").

    Generally, the A.L.J.'s assessment of a plaintiff's
credibility is afforded great deference, because the A.L.J. is in
the best position to evaluate the demeanor and attitude of the
plaintiff. See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 43 (3d
Cir. 2001). However, the A.L.J. must explain the reasons for his
or her credibility determinations. Schonewolf v. Callahan, 972

12

F. Supp. 277, 286 (D.N.J. 1997) (citations omitted).

In this case, the A.L.J. gave Plaintiff's testimony some benefit of the doubt, and accordingly, limited Plaintiff to a limited range of sedentary work. (Tr. 22). The A.L.J. examined the medical record and found a lack of evidence to support the degree of subjective pain alleged by Plaintiff. The A.L.J. also appropriately considered Plaintiff's daily activities, including her attendance at college classes, as evidence that Plaintiff's limitations were not as severe as she alleged. The Court concludes that adequate support exists for the A.L.J.'s determination that Plaintiff's subjective complaints of pain were not entirely credible.

As for Plaintiff's argument that the A.L.J. ignored her disabling headaches, the Court notes that the A.L.J. found her headaches to be a severe impairment. (Tr. 19). However, the Court agrees with the A.L.J. that the record does not support a finding that her headaches were disabling. A CT scan of Plaintiff's head was negative (Tr. 328), and Plaintiff made no complaints of headaches after July 2001. (Tr. 305-320). In addition, on April 18, 2003, Plaintiff denied having had a migraine for at least a year. (Tr. 296). To the extent Plaintiff complained that her headaches were exacerbated by her high blood pressure, the Court also notes that the record indicates that Plaintiff was not compliant with her blood

pressure medication (Tr. 315-32). 20 C.F.R. § 404.1530.

As for Plaintiff's diagnosis of schizophrenia by Dr. Rees, the Court likewise concludes that substantial evidence supports the A.L.J.'s decision to decline to give significant weight to Dr. Rees' diagnosis. Dr. Rees' diagnosis was dated January 21, 2999, before the relevant time period. As the A.L.J. noted, it was unsupported by any treatment notes, and although the A.L.J. suggested that Plaintiff may have been treated for depression for a short period of time, the Court finds no evidence in the record of mental health treatment during the relevant time period. (Tr. 305-334). Moreover, Plaintiff repeatedly denied feeling depressed in medical screenings occurring in February 2001 and July 2002. (Tr. 316, 331). Because the medical record does not support Plaintiff's allegations of disabling headaches or a disabling mental impairment, the Court concludes that the A.L.J. did not err in his findings regarding these impairments.

Plaintiff also contends that the A.L.J. failed to give appropriate weight to the VA's disability rating. However, it is well-established that a determination made by a non-governmental agency or another governmental agency that an individual is disabled is not binding on the Commissioner. 20 C.F.R. § 404.1504, Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984). Nevertheless, the A.L.J. considered the VA's rating and concluded that it was "of limited value here." (Tr. 21). In so doing, the

A.L.J. adequately explained the reasons for his determination, and therefore, the Court cannot conclude that the A.L.J. erred in failing to adequately consider Plaintiff's disability rating from the VA.

In sum, the Court concludes that substantial evidence supports the A.L.J.'s decision that Plaintiff is not disabled, and the Court cannot conclude that the A.L.J. erred in his analysis of Plaintiff's claims.[1]  The hypothetical question posed by the A.L.J. included the limitations supported by the record on Plaintiff's ability, and the vocational expert identified a significant number of jobs that Plaintiff could perform. Accordingly, the Court will affirm the decision of the Commissioner denying Plaintiff's claim for DIB.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Cross-Motion For Summary Judgment and deny Plaintiff's Motion For Summary Judgment.  The decision of the Commissioner dated August 19, 2006, will be affirmed.

An appropriate Order will be entered.

---

[1]      In reaching this conclusion, the Court notes that Plaintiff points to evidence supporting her alleged impairments that either predates the relevant time period or post-dates the expiration of her insured status, and thus, this evidence is not relevant to establishing whether Plaintiff was disabled during the time period extending from February 20, 1999 through December 3, 2002.  Nevertheless, the A.L.J. considered some of this evidence, including Plaintiff's diagnosis of schizophrenia, and properly declined to give the evidence significant weight, noting a lack of supporting evidence for these impairments during the relevant time frame in the record.

15